#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DIRK RICKARD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 14-1069-JWL |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

#### MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.     Background**

Plaintiff applied for SSI, alleging disability beginning January 1, 2006. (R. 9, 171-90). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the Administrative Law Judge (ALJ) erred because her residual functional capacity (RFC) assessment is not

supported by substantial record evidence. (Pl. Brief 8). Specifically, he argues that the ALJ erroneously relied upon the opinions of two non-examining physicians, Dr. Goldsmith and Dr. Raju, and of Plaintiff's treating chiropractor, Dr. Jansen. (Pl. Br. 10). He argues that such reliance is "misplaced in the context of [Mr.] Rickard's more recent functioning," id., and in view of Dr. Bruner's examination on August 23, 2012 at which he recommended bilateral knee replacements and a two-level fusion in Plaintiff's cervical spine. Id. at 11-12.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's evaluation of the medical opinions or in her RFC assessment.

**II.    Assessment of RFC**

As noted above, Plaintiff argues that the ALJ erroneously relied upon the opinions of Dr. Goldsmith, Dr. Raju, and Dr. Jansen.  (Pl. Br. 10).  He argues that such reliance is "misplaced in the context of [Mr.] Rickard's more recent functioning," id., and in view of Dr. Bruner's examination on August 23, 2012 at which he recommended bilateral knee replacements and a two-level fusion in Plaintiff's cervical spine.  Id. at 11-12.  He notes that Dr. Bruner diagnosed Plaintiff with severe bilateral degenerative joint disease in his knees and severe degenerative disc disease in his cervical spine, and that none of these three doctors was aware of Dr. Bruner's diagnoses and recommendations.  Id.  He argues that the ALJ erred in finding that Dr. Bruner's examination did not reveal evidence of paresthesias, and ignored Dr. Bruner's recommendation for a two-level fusion.  (Pl. Br. 12-13) (citing Belcher v. Astrue, Civ. A No. 09-2299-KHV-GBC, 2010 WL 2232697 (D.

4

Kan. May 4, 2010) rep. and rec. adopted, 2010 WL 2232694 (D. Kan. June 1, 2010)).  In his final argument, Plaintiff suggests that in light of Dr. Bruner's examination and recommendations a "more reasonable RFC" would limit Plaintiff to sedentary work.  Id. at 13.  The Commissioner argues that Dr. Bruner never identified any functional limitations to which Plaintiff was restricted (Comm'r Br. 5), that the ALJ appropriately determined that Dr. Bruner's "positive x-ray and examination findings support limiting the claimant's stooping, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and scaffolds," and she limited them accordingly (Comm'r Br. 7), and that her RFC assessment is supported by substantial record evidence.  Id. at 6-8.  In his Reply Brief, Plaintiff acknowledges that the ALJ quoted Dr. Bruner's statement that "the claimant needs knee replacement as well as 2 level cervical spine fusion and decompression" (Reply 2) (quoting R. 17), but he argues that the ALJ did not explain how he "handled Dr. Bruner's opinion that [Mr.] Rickard 'is not employable' and that [Mr.] Rickard needed multiple surgeries."  Id.

### A.     The ALJ's Evaluation

The ALJ determined Plaintiff has the RFC to perform work which requires lifting no more than 20 pounds at a time, and frequently lifting up to 10 pounds, and which requires a good deal of walking or standing, or which involves sitting most of the time with some pushing and pulling of arm or leg controls.  (R. 15) (citing 20 C.F.R. § 416.967(b)).  She determined that Plaintiff was further limited to only occasional stooping, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and

scaffolds.  Id.  In reaching this determination, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the symptoms alleged, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms are not credible.  (R. 15).

The ALJ noted that Plaintiff's treating chiropractor, Dr. Jansen, completed a medical source statement in June of 2012 in which he opined that Plaintiff is able to perform a range of light work.  (R. 18-19) (citing Ex. 10F, R. 359-61).  The ALJ acknowledged that although Dr. Jansen treated Plaintiff from 2008 through 2012, he had only treated him three times in the last three years.  (R. 19).  She also noted that Dr. Jansen's opinion "certainly contradicts the allegations of the claimant," and she accorded that opinion "partial, but not full weight."  Id.

The ALJ summarized the opinion of the state agency non-examining physician, Dr. Goldsmith, who reviewed the record at the initial consideration and opined that Plaintiff is able to perform a range of light work.  Id.  She recognized that Dr. Raju, another state agency non-examining physician affirmed Dr. Goldsmith's opinion at the reconsideration level.  Id.  The ALJ stated that she had given this opinion "considerable weight" although she had tempered the opinion that Plaintiff could frequently climb ramps and stairs by finding that Plaintiff was limited to doing these activities only occasionally.  (R. 19).  She also noted that the state agency physicians' opinion was consistent with the opinion of Dr. Bleazard, who had prepared a report of an examination of Plaintiff, and which opinion the ALJ accorded "substantial weight."  Id.  The ALJ also found that although the opinions

and examination of Dr. Goldsmith, Dr. Raju, and Dr. Bleazard were made "prior to the x-rays and reports with Dr. Bruner," the findings from Dr. Bruner's "examination did not indicate any significant change in the claimant's functional ability." Id.

The ALJ also summarized and explained her evaluation of Dr. Bruner's examination note from the visit of August 23, 2012:

> At hearing, the claimant testified in contemplation of his hearing, he wanted to get recent x-rays of his knees. He testified that a few weeks prior, he had seen Bradley Bruner, M.D, an orthopaedic surgeon who had treated him back in 1994. A report from this examination was provided, which contained statements regarding the x-rays, but no actual x-ray reports. (Exhibit 13F [R. 385-90]) The report indicates four views of the left knee were taken finding "degenerative joint disease-severe." (Exhibit 13F/4 [R. 388]) Two views of the cervical spine were taken showing "severe degenerative joint disease at C5-6 and C6-7." Included in the report were additional plan comments which stated "the claimant needs knee replacements as well as a 2 level cervical spine fusion and decompression. He is applying for disability as he is not employable. He will send us paperwork as necessary." The provider is indicated to be Dr. Bruner, however it appears the report was signed only by Bonnie Alvord, CPC, CEMC, MCS-P. (Exhibit 13F/5 [R. 389])
>
> While the undersigned acknowledges these recent x-rays appear to show severe degenerative joint disease of the cervical spine and left knee, the objective findings from his examination do not support the loss of functional ability alleged by the claimant. The claimant complained of paresthesias but neurologic exam showed sensation to be intact. While the claimant alleges an extreme degree of limitation in his ability to stand or walk, this is not supported by the objective findings. Range of motion is decreased in both the neck and knees, but motor function is normal, as is the strength of the both [sic] knees. The claimant is able to ambulate effectively without an assistive device. The positive x-ray and examination findings support limiting the claimant's stooping, crouching, crawling and climbing of ramps, stair, ladders, ropes and scaffolds, but do not suggest that the claimant would be unable to perform the lifting/carrying, standing/walking and sitting required for light work.

(R. 17-18).

## B.   Analysis

Plaintiff acknowledges that the opinions of Dr. Goldsmith, Dr. Raju, and Dr. Jansen "suggested [Mr.] Rickard could perform light work." (Pl. Br. 10). Moreover, the ALJ accorded substantial weight to the findings recorded in Dr. Bleazard's examination report which are consistent with the state agency consultants' opinion that Plaintiff can perform a range of light work. (R. 19). None of this is disputed by Plaintiff. Rather, he argues that this is all changed by evidence of his "more recent functioning" and by Dr. Bruner's examination note which shows that Plaintiff needs both knees replaced and a two-level cervical fusion. (Pl. Br. 10).

The problem with Plaintiff's argument is that he points to no dispositive evidence that his alleged "more recent functioning" precludes the RFC findings of the ALJ. The only evidence relied upon by Plaintiff in this argument is the examination note of Dr. Bruner. But, as quoted above, the ALJ thoroughly summarized and discussed that evidence.

Plaintiff argues that Dr. Bruner's recommendation of bilateral knee replacements and a two-level cervical fusion "constitutes a material change in Rickard's condition" (Pl. Br. 12), which shows the error in the ALJ's finding "that Dr. Bruner's examination 'did not indicate any significant change in the claimant's functional ability.'" (Pl. Br. 11) (quoting R. 19). While it is true that after Dr. Bruner's examination Plaintiff was recommended to undergo three surgeries for which there apparently was no

8

recommendation prior to that examination, Plaintiff does not point to any authority or record evidence showing that there was a change in Plaintiff's <u>functional abilities</u> before and after Dr. Bruner's examination. And, Plaintiff points to no authority, legal or medical, for the proposition that recommendations for knee replacement and/or cervical fusion preclude the performance of a range of light work before those surgeries are performed. Plaintiff points to signs and symptoms reported in Dr. Bruner's notes, and argues that they show that the opinions regarding light work cannot stand, but as the ALJ found, "the objective findings from [Dr. Bruner's] examination do not support the loss of <u>functional ability</u> alleged by the claimant." (R. 17) (emphasis added). In fact, as the ALJ found, there is no mention in Dr. Bruner's notes regarding functional limitations attributed to Plaintiff.

Plaintiff's argument, that the other doctors did not have the opportunity to review Dr. Bruner's notes before they opined regarding a range of light work, is irrelevant. As Plaintiff admits,

> it is "the ALJ, not a physician, [who] is charged with determining a claimant's RFC from the medical record." <u>Howard v. Barnhart</u>, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." <u>McDonald v. Astrue</u>, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96–5p, 1996 WL 374183, at *5 (July 1996)). Because an RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." <u>Dixon v. Apfel</u>, No. 98–5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

(Pl. Br. 9). Here, the ALJ had the opportunity to review Dr. Bruner's note, she did so, and she explained her evaluation of that note. She provided several factors which tend to detract from the weight to be afforded that note. There were statements regarding the x-rays, but no x-ray reports. The note was not signed by Dr. Bruner. The x-rays appear to show severe degenerative disease, but the objective findings do not support the loss of functional ability alleged by Plaintiff. Plaintiff complained of paresthesias, but the neurologic exam showed intact sensation. Range of motion is decreased but motor function and strength is normal. And, Plaintiff can ambulate effectively without an assistive device. (R. 17-18). That is what is required in an RFC assessment.

Plaintiff argues that Dr. Bruner's finding of paresthesias on the Spurling's test (R. 388), shows error in the ALJ's finding--that Plaintiff complained of paresthesias, but the neurologic exam showed intact sensation. This is not error. While Dr. Bruner reported paresthesias on the Spurling's test, that report is necessarily based, as the ALJ noted, on Plaintiff's report, but as the ALJ also found, Dr. Bruner's neurologic exam revealed intact sensation. (R. 387). While the record is not absolutely conclusive either way, the evidence supports the ALJ's finding.

Plaintiff asserts that "the ALJ completely ignored Dr. Bruner's recommendation for a two level [cervical] fusion," and argues that an "ALJ cannot 'make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and <u>not due to ... her own credibility judgments, speculation or lay opinion</u>.'" (Pl. Br. 12) (quoting <u>McGoffin v. Barnhart</u>, 288

F.3d 1248, 1252 (10th Cir. 2002) (further quotation omitted; emphasis in McGoffin).  As to Dr. Bruner's recommendation for a two-level cervical fusion, the ALJ did not ignore it.  In the decision, she specifically quoted Dr. Bruner's note that Plaintiff "needs knee replacements as well as a 2 level cervical spine fusion and decompression."  (R. 17) (quoting R. 389).  With regard to the principle that an ALJ may not reject a treating physician's opinion due to credibility judgments, speculation, or the ALJ's lay opinion, Plaintiff has shown, and the court has found, no opinion of Dr. Bruner which the ALJ rejected.  The ALJ accepted Dr. Bruner's diagnoses of severe degenerative disc disease and severe degenerative joint disease and she accepted his recommendations that Plaintiff have bilateral knee replacements and a two-level cervical spine fusion and decompression.  What the ALJ rejected was the conclusion (suggested by Plaintiff and based on Dr. Bruner's examination note) that Plaintiff cannot perform a range of light work.  This is not error.  As noted above, Plaintiff has not demonstrated that that conclusion is compelled by the record evidence, including Dr. Bruner's examination note.

In his Brief, Plaintiff asserts that "Dr. Bruner noted [Mr.] Rickard is 'not employable'" (Pl. Br. 13), and in his Reply Brief he argues that the ALJ erred when she failed to explain how she rejected that opinion.  (Reply 2).  The Commissioner argued that "[a]t most, he opined Plaintiff was unemployable."  (Comm'r Br. 5) (emphasis added).  As the ALJ noted, Dr. Bruner stated "[Mr Rickard] is applying for disability as he is not employable.  He will send us paperwork as necessary."  (R. 17) (quoting R. 389).  There is no error in the ALJ's failure to treat this statement as a medical opinion

11

because it appears to be Dr. Bruner's report of Plaintiff's belief, not Dr. Bruner's statement of a medical opinion. On its face this statement may be read merely as Dr. Bruner's acknowledgment that Plaintiff thought he was unemployable and was applying for disability benefits. Cowan v. Astrue, 552 F.3d 1182, at 1189 (10th Cir. 2008), a case cited in the Commissioner's Brief, held that a physician's brief statement about a patient's inability to work was not a medical opinion because it did not contain the physician's "judgment about the nature and severity of [the claimant's] physical limitations, or any information about what activities [the claimant] could still perform."

That is precisely the situation presented here. As the ALJ specifically noted, Dr. Bruner's examination findings do not support the loss of functional ability alleged by Plaintiff. Moreover, Dr. Bruner's examination notes do not suggest particular physical functional limitations or provide information regarding the activities Plaintiff can still perform. And, it is by no means clear that Dr. Bruner was not merely acknowledging Plaintiff's beliefs. Here, Dr. Bruner's statement about employability is not a medical opinion, and there is no need, therefore, for the ALJ to explain why she "rejected" it.

Plaintiff's appeal to the decision in Belcher is likewise unavailing. In that case, the ALJ found that the claimant's pain was only "slight," but the court noted that there was no record evidence or other authority to support that finding, and remanded the case for the ALJ to explain the basis for her determination that the RFC limitations assessed would properly account for the claimant's pain. Belcher, 2010 WL 2232697 at *4. Here, the ALJ explained the bases for the RFC limitations she assessed. There was no need to

explain why she "rejected" portions of Dr. Bruner's opinion because she did not do so. She accepted each of his opinions, but his statement about employability was not a medical opinion--as discussed above.

In his final argument, Plaintiff asserts that a "more reasonable RFC would have accounted for Dr. Bruner's examination and recommendations . . . by limiting [Mr.] Rickard to sedentary work."  (Pl. Br. 13).  Plaintiff's argument forgets that the question before the court is not what is the most reasonable decision in this case, but whether substantial record evidence supports the Commissioner's decision.  Plaintiff's argument is merely an invitation to the court to reweigh the evidence, a course it is forbidden to take. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 20th day of March 2015, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**